# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18 cv 98

| | |
|---|---|
| **JOSHUA T. GRIFFIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| **SHANNON MORTIER,** *in her official and* ) | |
| *individual capacities*, **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

Before the Court are two Motions to Dismiss [# 4, # 5] filed by Defendants Van Duncan, Glen Matayabas, Scott Allen, the Buncombe County Sheriff's Department ("Sheriff's Dep't"), and Buncombe County.

On April 16, 2018, Plaintiff filed his Complaint. [# 1]. On June 13, 2018, Defendants filed their Motions to Dismiss. [# 4, # 5]. On July 12, 2018, Plaintiff filed his Response in Opposition to both Motions. [# 10]. On July 17, 2018, Defendants Duncan, Matayabas, Allen, and the Sheriff's Dep't filed their Reply to the Response. [# 13]. On July 18, 2018, Defendant Buncombe County filed its Reply to the Response. [# 14]. The District Court referred the Motions to Dismiss to this Court. Accordingly, Defendants' Motions are now before this Court for a Memorandum and Recommendation to the District Court. The Court will recommend the District Court grant Defendants' Motions to Dismiss. [# 4, # 5].

## I. Relevant Factual Background

<u>The Actors.</u> During the relevant time, Plaintiff Joshua T. Griffin was a pretrial detainee at the Buncombe County Detention Center ("BCDC"). [Compl. ¶ 1]. Scott Allen was the Chief Deputy of the BCDC. [Id. at ¶ 5]. Glen Matayabas was a supervisor of detention officers at the BCDC. [Id. at ¶ 4]. Shannon Mortier was the registered nurse on duty and medical supervisor of the BCDC. [Id. at ¶¶ 2, 18]. "John Doe" was a guard at the BCDC. [Id. at ¶ 6].

Van Duncan is the Sheriff of Buncombe County. [Id. at ¶ 3]. Plaintiff alleges the Sheriff's Dep't is a "local governmental entity responsible for the supervision and control of the [BCDC]." [Compl. ¶ 7]. Plaintiff alleges Buncombe County is the municipality responsible for the Sheriff's Dep't and the BCDC. [Id. at ¶ 8].

<u>Background.</u> On April 13, 2015, Plaintiff was arrested on impaired driving charges. [Id. at ¶ 10]. Subsequently, Plaintiff was sentenced to serve an active term of 30 days in the custody of the Buncombe County Sheriff. [Id.]. From Plaintiff's initial paperwork, it appears Plaintiff was to be placed at the BCDC and put on detox watch. [Id. at ¶ 11]. On April 14, 2015, Plaintiff was booked and admitted to the BCDC. [Id. at ¶ 12]. On April 15, 2015, Plaintiff was moved from his cell to the medical unit for thirty minutes. [Compl. ¶ 13]. The guard responsible for moving Plaintiff is only identified in the Inmate Log as "halev." [Id. at ¶ 14]. While there is a record of Plaintiff going to the medical unit, no medical records were created from this visit. [Id. at ¶ 13].

<u>Plaintiff's Seizures.</u> On April 16, 2015, at around 11:20 AM, Plaintiff was having lunch when he had a seizure. [Id. at ¶ 15]. Plaintiff fell to the floor and hit his head. [Id. at

¶ 16]. Plaintiff's right ear began exuding blood. [Id.]. John Doe witnessed the seizure and called for medical. [Compl. ¶ 17]. Plaintiff was taken to RN Mortier. [Id. at ¶ 18]. RN Mortier was told of Plaintiff's seizure and fall. [Id.]. Plaintiff complained to RN Mortier of pain in his right ear and acted in an "unusual and confused manner." [Id.]. Plaintiff alleges RN Mortier did not properly evaluate Plaintiff's condition and did not examine or treat the injury. [Id. at ¶ 19]. For example, RN Mortier saw Plaintiff's nose was bleeding but did not examine or treat the injury. [Id. at ¶ 21]. Without a doctor's examination, RN Mortier placed Plaintiff in a medical holding cell for monitoring. [Compl. ¶ 20].

While in the medical holding cell, Plaintiff became increasingly confused. [Id. at ¶ 22]. Plaintiff suffered another seizure. [Id. at ¶ 23]. As Plaintiff started to shake, he stumbled backward and landed on the bunk. [Id.]. Plaintiff then slid off the bunk due to the convulsions. [Id.]. His head struck the floor—fracturing his skull. [Id. at ¶ 24]. Someone[1] responded and pulled Plaintiff out from under the bunk. [Compl. ¶ 25]. Plaintiff's face and neck had taken a purplish hue. [Id.]. Plaintiff's seizure continued for another ten or fifteen seconds. [Id.]. Because of the seizure Plaintiff became unable to communicate. [Id. at ¶ 26]. Plaintiff then suffered another seizure that lasted around twenty seconds. [Id. at ¶ 27].

Plaintiff's breathing became agonal and his respirations shallow. [Id. at ¶ 28]. Someone gave Plaintiff a "deep sternal rub" and his respirations resumed closer to normal. [Compl. ¶ 28]. At 12:25 PM, Someone called an ambulance.[2] [Id. at ¶ 29]. EMS transported

---

[1] Plaintiff does not allege who responded to Plaintiff's seizure.

[2] Sixty-five minutes elapsed from the time of Plaintiff's first seizure and the ambulance being called.

Plaintiff to Mission Hospital. [Id.]. Plaintiff was placed in the Intensive Care Unit. [Id.].

While at Mission Hospital, Plaintiff received a computed tomography ("CT") scan of his head. [Id. at ¶ 30]. The CT scan showed Plaintiff had a "right temporal bone fracture with extension into the mastoid air cells as well as a right epidural and hemorrhagic contusion involving the right frontal lobe." [Id.]. Plaintiff's mental state continued to deteriorate leading to intubation. [Compl. ¶ 31]. Trauma Surgery was then consulted for Plaintiff's admission. [Id.]. Then medical staff took Plaintiff for a craniotomy. [Id. at ¶ 32].

On April 21, 2015, Mission Hospital discharged Plaintiff. [Id. at ¶ 33]. Plaintiff, however, has permanent and lasting complications from the seizures and resulting head injury. [Id. at ¶ 33]. Since the incident, Plaintiff suffers from "loss of brain function, hearing [loss], memory loss, and continues to endure additional physical and mental effects including loss of taste, erectile dysfunction, extreme migraines, irritability, fatigue, anxiety, depression, and further seizures." [Id. at ¶ 34]. Plaintiff also suffers from post-traumatic stress disorder. [Compl. ¶ 35]. Because of Plaintiff's symptoms he is unable to work. [Id.].

Plaintiff alleges all Defendants acted in their individual and official capacities "in denying Plaintiff medical care." [Id. at ¶ 36]. Plaintiff alleges the Sheriff's Dep't and Buncombe County failed to adequately train officers and "failed to enact policies and procedures to ensure Plaintiff's constitutional rights would not be violated." [Id. at ¶ 37]. Plaintiff alleges Defendants have "waived their immunity to the extent they have purchased liability insurance." [Id. at ¶ 38].

## II.     Legal Standard

**Federal Rule of Civil Procedure 12(b)(6).** The central issue for resolving a Rule

4

12(b)(6) motion is whether the claims state a plausible claim for relief. *See* Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190–92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; *see also* Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007); *see also* Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; *see also* Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. *See also* Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted

5

unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

### III. Analysis

#### A. Motion to Dismiss the Buncombe County Sheriff's Department as a Defendant

Plaintiff has sued both Van Duncan—Buncombe County Sheriff and the Sheriff's Dep't. Under North Carolina law, however, the Sheriff's Dep't is not a "distinct legal entity with the capacity to be sued." Treadway v. Diez, 703 S.E.2d 832, 835 (N.C. Ct. App. 2011) (Jackson, J., dissenting), *rev'd and dissent adopted by* 715 S.E.2d 852, 853 (N.C. 2011) (per curiam). Plaintiff's cited authority supports that the correct entity to sue (and which Plaintiff did) is Van Duncan, in his official capacity as Sheriff. Layman ex. rel. Layman v. Alexander, 343 F.Supp.2d 483, 489 (W.D.N.C. 2004) ("A sheriff's department, through a claim against one of its employees in their official capacity, may be liable for the failure to train its employees . . .") (emphasis added).

Accordingly, the Court will recommend Defendants' Motions to Dismiss be granted as to dismissing the Sheriff's Dep't as a defendant.

#### B. Eighth Amendment Violations Brought Through § 1983

> . . . nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . "

42 U.S.C. § 1983.

### i. Individual Defendants in Their Individual Capacity

The Eighth Amendment protects inmates from "inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Further, through the Due Process Clause of the Fourteenth Amendment, pretrial detainees retain a "liberty interest in freedom from "punishment" even while they are detained" awaiting trial. Dilworth v. Adams, 841 F.3d 246, 251 (4th Cir. 2016) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) (finding pretrial detainees are protected with respect to "*any* form of 'punishment.'") (emphasis in original)).

Plaintiff's claims derive from his allegations of deliberate indifference to serious medical needs. "Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal citation omitted). In order to successfully state a claim of deliberate indifference, a plaintiff must show: 1) "the deprivation alleged must be, objectively, sufficiently serious;" and 2) that prison authority knew that a plaintiff "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 834, 847 (1994); *see also* Smith v. Smith, 589 F.3d 736, 738–39 (4th Cir. 2009); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Plaintiff has not alleged Defendants Duncan, Matayabas, or Allen *themselves*

deprived Plaintiff of a constitutional right. From the Complaint, the only actors who appear that could have known about an alleged substantial risk and disregard it were RN Mortier, John Doe, and "Someone." Accordingly, the Court will recommend the District Court grant Defendants' Motions to Dismiss as to Defendants Duncan, Matayabas, and Allen in their individual capacities.

### ii. Individual Defendants in Their Official Capacity

"[T]he theory of supervisory liability arises from the obligation of a supervisory law officer to [ensure] that his subordinates act within the law." Randall v. Prince George's Cty., Md., 302 F.3d 188, 203 (4th Cir. 2002). To successfully state a claim of supervisory liability, a plaintiff must show:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Haynes v. City of Durham, N.C., No. 1:12-CV-1090, 2014 WL 2864470, at *6 (W.D.N.C. June 24, 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiff's claim fails at step one. Plaintiff has not alleged sufficient facts in two ways. First, Plaintiff does not allege who was supervising whom at the BCDC. Even construing the facts in favor of Plaintiff, the claim still fails when the Court hypothetically assumes the Sheriff or any of his deputies were supervisors of RN Mortier, John Doe, and Someone. Plaintiff does not allege that Defendants had actual or constructive knowledge of the conduct alleged. Plaintiff asks the Court to jump to the conclusion that by the fact

that the conduct happened (i.e., placing Plaintiff in a medical cell as opposed to immediately transporting him to a hospital) then Defendants Duncan, Matayabas, and Allen must have known about it. The Court is unwilling to leap before it looks.

Accordingly, the Court will recommend the District Court grant Defendants' Motions to Dismiss as to Defendants Duncan, Matayabas, and Allen in their official capacities.

### iii. Defendant Buncombe County

"Whether a county or county official has final policymaking authority in a specific area is a question of state law." Wiley v. Buncombe Cty., 846 F. Supp. 2d 480, 486 (W.D.N.C. 2012). Under North Carolina law, the office of the Sheriff is an elected position—a distinct entity from the Board of County Commissioners, and therefore not employed by Buncombe County. Id. (quoting Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000)). Thus, it is the Sheriff who has the final decision-making authority over his office and the deputies and detention officers who "are appointed and act for the sheriff, who alone is responsible for their conduct." Id. (quoting Styers v. Forsyth Cty., 194 S.E. 305, 307 (N.C. 1937)). "In addition, the sheriff has exclusive custody and control over the jail in his county." Id. (citing N.C. GEN. STAT. § 162-22); *see also* Knight v. Vernon, 214 F.3d 544, 545 (4th Cir. 2000) ("Sheriffs run the county jails in North Carolina.").

It appears as a matter of law that Buncombe County neither has control over the Sheriff, his deputies, or the BCDC nor is it the final decision-maker for the Sheriff's policies. Thus, Plaintiff's claim against Buncombe County must fail. *See* Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694–95 (1978).

Additionally, the Court notes Plaintiff has failed to allege facts that support his generalized claim of the existence of a custom or policy in denying medical services.

For these reasons, the Court will recommend the District Court grant Defendants' Motions to Dismiss as to dismissing the claims against Defendant Buncombe County.

### C. Civil Conspiracy Brought Through § 1983

To successfully state a claim of civil conspiracy, a plaintiff must allege that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff need not allege an overt meeting of the minds. *See* id. Rather, a plaintiff may allege defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *See* id.

At this point, the Court finds it appropriate to evaluate Plaintiff's assertion that by not immediately calling an ambulance, Defendants deprived Plaintiff of a constitutional right. While Plaintiff has a right to reasonable medical care, Plaintiff does not have the right to prefer a treatment if both treatments would be adequate. *See* Cokley v. Townley, No. 90-6826, 1991 WL 13926, at *1 (4th Cir. Feb. 11, 1991) (per curiam) (citing Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam)).

From the Complaint, it appears employees at BCDC knew Plaintiff was on detox watch. Soon after arriving at BCDC, Plaintiff was seen by medical staff, however, no record was made of this first visit. Later, Plaintiff had a seizure while eating lunch. RN Mortier placed Plaintiff in a medical holding cell. Then, when Plaintiff had a series of more

10

Case 1:18-cv-00098-MR-WCM    Document 21    Filed 08/14/18    Page 10 of 15

severe seizures, then Someone called for an ambulance. Plaintiff was transported to a hospital. The time from Plaintiff's first seizure to the call of the ambulance was 65 minutes.

The Court finds it was patently reasonable to place Plaintiff in a medical holding cell after his first seizure. While Plaintiff had sustained superficial injuries at that point, he still appeared coherent albeit confused. The Court also finds it would have been reasonable to have called an ambulance at that same moment. Without more facts, the Court cannot infer Plaintiff had a history of seizures (and that Defendants knew and chose to ignore that fact) or a seizure was imminent because of Plaintiff detoxing (and that Defendants knew and chose to ignore that fact), a second onset of seizures was obvious (and that Defendants knew chose to ignore that fact), etc. Thus, it appears Plaintiff received reasonable medical treatment. Therefore, the Court finds Plaintiff has not alleged a deprivation of his Eighth Amendment rights. Because the Court has found no deprivation of a constitutional right, it follows that there was no conspiracy therein to do so.

Therefore, the Court will recommend the District Court grant Defendants' Motions to Dismiss as to Plaintiff's claim of civil conspiracy.

### D. Plaintiff's Claims under N.C. Const. art. I, § 27 Brought Through § 1983

North Carolina's Constitution prohibits the infliction of "cruel *or* unusual punishments." *Compare* N.C. Const. art I, § 27, *with* U.S. Const. amend. VIII. North Carolina courts have "analyzed cruel and/or unusual punishment claims by criminal defendants the same under both the federal and state Constitutions." State v. Pettigrew, 693 S.E. 2d 698, 705 (N.C. Ct. App. 2010) (quoting State v. Green, 502 S.E.2d 819, 828 (N.C. 1998)). Thus, it appears to the Court that the analysis for Plaintiff's claim under the N.C.

Constitution would be nearly (if not, then exactly) identical as its analysis under the Federal Constitution. Accordingly, the Court will recommend the District Court grant Defendants' Motion to Dismiss as to Plaintiff's claim of a N.C. Constitutional violation.

### E. Intentional Infliction of Emotional Distress

Under North Carolina law, to satisfy a claim for intentional infliction of emotional distress ("IIED") a plaintiff must allege: "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." Holloway v. Wachovia Bank & Trust Co., N.A., 452 S.E.2d 233, 240 (N.C. 1994). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Guthrie v. Conroy, 567 S.E.2d 403, 408–09 (N.C. Ct. App. 2002) (quoting Briggs v. Rosenthal, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985), *cert. denied*, 332 S.E.2d 479 (N.C. 1985)). Whether conduct constitutes the type of extreme and outrageous conduct that could give rise to an intentional infliction of emotional distress claim is a question of law. Johnson v. Colonial Life & Accident Ins. Co., 618 S.E.2d 867, 872–73 (N.C. Ct. App. 2005); *see* Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000).

The North Carolina courts have determined the level required by law to qualify as "outrageous" conduct. The conduct must be "atrocious, and utterly intolerable in civilized community." Guthrie, 567 S.E.2d at 408–09. This differs from "behavior universally regarded as inappropriate and abhorrent." Oritz v. Big Bear Events, LLC, No 3:12-CV-341-RJC-DCK, 2013 WL 247444, at *4 (W.D.N.C. Jan. 23, 2013).

Plaintiff's claim fails at step one. Even construing the facts in favor of Plaintiff, the Court does not find placing Plaintiff in a medical holding cell after a seizure instead of immediately calling an ambulance as outrageous. This behavior does not even rise to the level of inappropriate or abhorrent. Accordingly, the Court will recommend the District Court grant Defendants' Motions to Dismiss as to Plaintiff's IIED claim.

In the alternative, the Court will recommend the District Court decline to exercise supplemental jurisdiction over Plaintiff's IIED claim. *See* Campbell-McCormick, Inc. v. Oliver, 874 F.3d 390, 398 (4th Cir. 2017); 28 U.S.C. § 1367(c).

### F. Respondeat Superior

Plaintiff outlined respondeat superior as a separate cause of action. [# 1 ¶¶ 81–86]. Upon review, this cause appears to be part and parcel of Plaintiff's previous argument alleging Duncan, Allen, the Sheriff's Dep't, and Buncombe County violated Plaintiff's Eight Amendment rights. Based on the Court's pervious analysis, the Court will recommend the District Court grant Defendants' Motions to Dismiss as to Plaintiff's respondeat superior claim.

### G. Plaintiff's Counsel's Claim that he *may* Seek Leave to Amend this Complaint

A party may amend its own pleading within 21 days after service of a motion pursuant to 12(b). Fed. R. Civ. P. 15(a)(1). After that time, a party may amend only with the consent of opposing counsel or with leave of Court. Fed. R. Civ. P. 15(a)(2). "Ordinarily, the Court "should freely give leave when justice so requires." Bailey v. Polk Cty., N.C., No. 1:10-CV-264, 2011 WL 4565449, at *3 (W.D.N.C. Sept. 29, 2011) (Reidinger, J.) (quoting Fed. R. Civ. P. 15(a)(2)). "[T]he Court in its discretion may deny a motion to

13
Case 1:18-cv-00098-MR-WCM    Document 21    Filed 08/14/18    Page 13 of 15

amend where there has been a "showing of prejudice, bad faith, futility, or dilatoriness associated with the motion."" Id. (quoting Sandcrest Outpatient Servs., P.A. v. Cumberland Cty. Hosp. Sys., Inc., 853 F.2d 1139, 1148 (4th Cir. 1988)); *see also* Yelverton v. Edmundson, No. 5:15-CV-134-F, 2015 WL 12916313, at *1 (E.D.N.C. Oct. 27, 2015).

Local Civil Rule 7.1(c)(2) states: "Motions shall not be included in responsive briefs. Each Motion must be set forth as a separate filed pleading." Plaintiff's Response in Opposition states: "Plaintiff may motion the Court to amend his pleadings and correct any deficiencies in his Complaint." [# 10 p. 11]. Accordingly, Plaintiff's counsel's statement that he *may* file a motion to amend is not a genuine motion to amend. While Plaintiff may still move to amend, the Court notes this is not the first-time counsel has used this tactic as a measure to clean up a complaint, the Motions to Dismiss were fully briefed and ripe, and it appears Plaintiff's counsel has been dilatory in filing any such motion to amend. Further, the Court emphasizes that Plaintiff's counsel was free to amend as a matter of course 21 days from the filing of the Motions to Dismiss.

Yet, the Court makes no determinations on a motion that has yet to be filed. Thus, the Court decided to proceed and make its recommendations to the District Court.

## IV. Conclusion

The Court respectfully **RECOMMENDS** the District Court **GRANT** Defendants' Motions to Dismiss [# 4, # 5].

Signed: August 13, 2018

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).