# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:18-cv-00098-MR-WCM

| | |
|---|---|
| **JOSHUA T. GRIFFIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **SHANNON MORTIER, in her** ) | |
| **official and individual** ) | |
| **capacities,** ) | |
| ) | |
| **Defendant.** ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment. [Doc. 63].

## I.  PROCEDURAL BACKGROUND

On April 16, 2018, the Plaintiff Joshua T. Griffin ("Plaintiff") filed this action, pursuant to 42 U.S.C. § 1983 and under the laws of North Carolina, against Shannon Mortier,[1] Van Duncan, Glen Matayabas, Scott Allen, the Buncombe County Sheriff's Department, Buncombe County, John Doe, and

---

[1] Since the filing of this lawsuit, Defendant Shannon Mortier has married and changed her name to Shannon Ensley. [See Doc. 63-1 at 1 n. 1]. To avoid confusion, however, this Order will continue to refer to Ms. Ensley as "Defendant Mortier."

"Other Unknown Defendants" (collectively, "Defendants"). [Doc. 1]. In his Complaint, the Plaintiff alleges that the Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights and that they also violated North Carolina law when they failed to timely provide him with appropriate medical treatment after the Plaintiff had a seizure while incarcerated at the Buncombe County Detention Center. [Id. at ¶¶ 39-86].

On November 19, 2018, this Court dismissed the Plaintiff's claims against Defendants Van Duncan, Glen Matayabas, Scott Allen, the Buncombe County Sheriff's Department, and Buncombe County. [Doc. 31]. On June 20, 2019, this Court also dismissed the Plaintiff's claim against Defendant Mortier and ordered the Plaintiff to show good cause for his failure to effect service on Defendant John Doe and "Other Unknown Defendants." [Doc. 42]. On July 8, 2019, this Court dismissed the Plaintiff's claims against Defendant John Doe and "Other Unknown Defendants" pursuant to the June 20, 2019 Order to Show Cause. [Text Order entered July 8, 2019].

On August 7, 2019, the Plaintiff filed a Notice of Appeal appealing this Court's Orders dismissing the Plaintiff's claims against each of the Defendants to the Fourth Circuit Court of Appeals. [Doc. 44]. On November 30, 2020, the Fourth Circuit issued an unpublished opinion vacating this

Court's dismissal of the Plaintiff's claims for deliberate indifference and intentional infliction of emotional distress against Defendant Mortier and remanding those claims for further proceedings. Griffin v. Mortier, 837 Fed. Appx. 166, 173 (4th Cir. 2020).[2]

On January 14, 2022, Defendant Mortier moved for summary judgment with respect to the Plaintiff's deliberate indifference and intentional infliction of emotional distress claims against her. [Doc. 63].

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[2] The Fourth Circuit, however, affirmed this Court's "dismissal of all other claims." Griffin, 837 Fed. Appx. at 173.

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" on the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 175, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiff as the non-moving party, the following is a recitation of the relevant facts.

During the events giving rise to this lawsuit, the Plaintiff was incarcerated at the Buncombe County Detention Center. [See Jail File, Doc. 63-3 at 22, 26]. The Plaintiff pled guilty to driving under the influence, and he was sentenced to imprisonment for a term of 24 months in the custody of the Misdemeanant Confinement Program. [See id. at 10]. The Plaintiff's sentence was suspended on the condition that he serve an active term of imprisonment of 30 days in the custody of the Buncombe County Sheriff's Office and be placed on supervised probation for a term of 24 months. [Id.]. On April 13, 2015, the Plaintiff surrendered himself to serve his active term of incarceration. [See id. at 9-10, 22; see also Griffin Dep., Doc. 63-4 at 19-20]. The Plaintiff arrived at the detention facility intoxicated and was placed in a holding cell until he could complete the booking process. [Jail File, Doc. 63-3 at 22]. As part of the booking process, the Plaintiff was asked various

5

Case 1:18-cv-00098-MR-WCM   Document 68   Filed 05/13/22   Page 5 of 19

questions, including questions about his medical history. [See id. at 18-19]. When asked whether he was subject to seizures, the Plaintiff answered that he was not. [Id. at 19]. The Plaintiff does not recall arriving at the detention facility intoxicated or answering questions as part of the booking process. [Griffin Dep., Doc. 63-4 at 24-25].

At approximately 11:30 a.m. on April 16, 2015, the Plaintiff had a seizure and fell and struck his head on a concrete floor at the detention facility. [Jail File, Doc. 63-3 at 26-27; see also Ensley Dep., Doc. 63-5 at 75-76]. The Plaintiff exhibited agonal (labored) breathing and spoke incoherently in "word salad." [Jail File, Doc. 63-3 at 27]. A medication nurse who answered a call to the medical unit regarding the Plaintiff's seizure activity noted in the Plaintiff's chart that there was blood flowing from the Plaintiff's right ear. [Id.]. She called for a wheelchair and sent the Plaintiff to the detention facility's medical unit for observation. [Id.].

The Plaintiff walked into the medical unit without a wheelchair. [Ensley Dep., Doc. 63-5 at 56]. When he arrived, he was assessed by Defendant Mortier, a nurse at the Buncombe County Detention Center. [Id.]. Defendant Mortier evaluated the Plaintiff by taking his blood pressure, his pulse, and his oxygen level and doing a neurological check for the Plaintiff's complaint of ear pain. [Id.]. Defendant Mortier did not see any blood in the Plaintiff's ear.

6

[Id. at 56, 61-62, 91]. The Plaintiff exhibited signs, including "using word salad and incoherent babbling," indicating that he was in a postictal (confused) state. [Id. at 82; Jail File, Doc. 63-3 at 26]. Defendant Mortier observed that the Plaintiff's "pupils were equal, round, and reactive to light accommodation." [Ensley Dep., Doc. 63-5 at 60]. Following her initial assessment, Defendant Mortier determined that the Plaintiff's symptoms were "not emergent" and that he did not "need to go to the [emergency room] at this point." [Id. at 57]. The Plaintiff was placed in a medical holding cell, and Defendant Mortier continued to monitor the Plaintiff through a window in the door of the holding cell. [Id. at 57-59; Jail File, Doc. 63-3 at 26]. An officer who was present in the medical unit also placed a mat on the floor of the holding cell for the Plaintiff so that the Plaintiff "was as low as he could be to the floor to prevent any injuries, if there were to be a subsequent seizure or a change in his level of consciousness." [Ensley Dep., Doc. 63-5 at 57].

While Defendant Mortier was observing the Plaintiff through the window in the holding cell door, the Plaintiff began looking under the mat. [Id. at 58; Jail File, Doc. 63-3 at 26]. Defendant Mortier asked the Plaintiff if he was looking for something, and the Plaintiff muttered an incoherent answer. [Ensley Dep., Doc. 63-5 at 58; Jail File, Doc. 63-3 at 26]. The

7

Plaintiff then began picking at the walls of the cell and began to stumble backwards. [Ensley Dep., Doc. 63-5 at 58-59; Jail File, Doc. 63-3 at 26]. As the Plaintiff stumbled backwards, Defendant Mortier yelled for an officer to open the cell door. [Ensley Dep., Doc. 63-5 at 59]. At this time, Defendant Mortier also noticed that the Plaintiff "had blood coming from his nose" and exhibited pupillary changes. [Id. at 60; Jail File, Doc. 63-3 at 26].

When Defendant Mortier was able to enter the cell, the Plaintiff "had stumbled backwards on his feet across the blue mat . . . and landed sitting on the bunk." [Ensley Dep., Doc. 63-5 at 59]. The Plaintiff began shaking and slid down onto the floor. [Id. at 59-60]. Defendant Mortier and an officer positioned the Plaintiff on the mat, where he began "to shake a little more." [Id.]. At this point, Defendant Mortier was "confident" that the Plaintiff was having another seizure. [Id.]. Defendant Mortier then called for someone to "roll EOC," the detention facility's emergency operation center, and to contact emergency medical services ("EMS"). [Id. at 60, 85-86].

While waiting for EMS to arrive at the detention facility, the Plaintiff had a third seizure lasting approximately 20 seconds. [Id. at 60-61; Jail File, Doc. 63-3 at 26]. At this time, the Plaintiff repeatedly made incoherent statements, and "[a]ll communication was 'word salad.'" [Jail File, Doc. 63-3 at 26]. Defendant Mortier also noticed that the Plaintiff exhibited further agonal

8

breathing and shallow respirations. [Id.]. The Plaintiff also "had kind of a bluish hue to his face," so Defendant Mortier checked the Plaintiff's oxygen level, which was below 90 percent. [Ensley Dep., Doc. 63-5 at 60-61]. Defendant Mortier administered oxygen to the Plaintiff and initiated a deep sternal rub, and the Plaintiff resumed respirations. [Jail File, Doc. 63-3 at 26]. EMS arrived at the detention facility at 12:25 p.m. and transported the Plaintiff to Mission Hospital in Asheville, North Carolina for further treatment. [Id. at 25]. At Mission Hospital, the Plaintiff underwent surgery for an intracranial bleed. [Id. at 23].

On April 17, 2015, the judgment suspending the Plaintiff's sentence was modified due to the Plaintiff's medical condition, and the Plaintiff was released from the Buncombe County Detention Center. [Id. at 13-14, 21].

During her interaction with the Plaintiff, Defendant Mortier did not consult with a physician regarding his care. [Ensley Dep., Doc. 63-5 at 43]. Defendant Mortier also did not rely on medical publications, written procedures, or policy manuals in treating the Plaintiff. [See id. at 53-54]. Instead, Defendant Mortier relied on her "[n]ursing judgment, [her] experiences, and [her] training as a nurse." [Id. at 54].

The Plaintiff recalls little information about his seizures at the detention facility. He recalls the first seizure occurring in front of approximately thirty

9

witnesses, and he recalls blood flowing from his ear. [Griffin Dep., Doc. 63-4 at 31-33, 68]. The Plaintiff does not remember, however, being transported to the detention facility's medical unit, being placed in a cell for observation, being treated by health care providers or being transported to the hospital. [Id. at 31-33]. The Plaintiff's first memory following his seizures on April 16, 2015 was waking up at Mission Hospital. [Id.].

In support of his deliberate indifference claims, the Plaintiff proffered the expert opinion of James Aiken, a consultant on prison management, a former Director of Corrections for the United States Virgin Islands, and a former Commissioner for the Indiana Department of Correction. [Doc. 63-7]. In part, Mr. Aiken concludes that Defendant Mortier, failed "to provide Mr. Griffin necessary minimal access to emergent medical care even though obvious operationally blatant key indicators (triggers) validated that Mr. Griffin was in peril." [Id. at 25]. Further, Mr. Aiken opines that Defendant Mortier "had the authority and responsibility, in at least . . . an operational context, to initiate EMS emergency response during the first episode . . . indicative of (operational) medical peril." [Id. at 27]. Therefore, she was "operationally deliberately indifferent and operationally committed gross negligence, by consciously allowing critical safety operation failures that would have reasonably not protected Mr. Griffin." [Id. at 25].

Following the seizures he suffered while at the Buncombe County Detention Center, the Plaintiff has scarring on the back of his head from surgery, and he suffers from headaches, memory loss, depression, anxiety, irritability, tinnitus, erectile dysfunction, blurry vision, loss of balance, loss of smell, low energy, and low attention span. [Doc. 63-2 at 5-6; see also Griffin Dep., Doc. 63-4 at 38-39]. The Plaintiff subsequently had another seizure in September of 2015 and was placed on anti-seizure medication. [Griffin Dep., Doc. 63-4 at 35, 37].

## IV. DISCUSSION

Defendant Mortier argues that she was not deliberately indifferent to the Plaintiff's serious medical needs and that the forecasted evidence does not support the Plaintiff's intentional infliction of emotional distress claim. [Doc. 63-1]. Defendant Mortier further argues that sovereign immunity bars the Plaintiff's Eighth Amendment official capacity claim, that she has qualified immunity from the Plaintiff's Eighth Amendment individual capacity claim, and that she has public official immunity from the Plaintiff's claims under North Carolina law. [Id. at 16-21].

### A. The Eighth Amendment

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's

prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). To prove such a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the plaintiff. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). A mere delay or interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). However, allegations that might be sufficient to

support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

The forecast of evidence does not show that Defendant Mortier disregarded the Plaintiff's serious medical needs. The forecast of evidence shows that Defendant Mortier examined the Plaintiff when he arrived at the medical unit. [Ensley Dep., Doc. 63-5 at 56; Jail File, Doc. 63-3 at 26]. She took his blood pressure, his pulse, and his oxygen level, and she noted that his pupils were equal, round, and reactive to light accommodation. [Ensley Dep., Doc. 63-5 at 56]. She also responded to the Plaintiff's complaint of ear pain by checking his ear for blood, and she found none. [Id. at 56, 61-62, 91]. Defendant Mortier testified that the Plaintiff appeared to be in a postictal state and spoke in "word salad and incoherent babbling," [Id. at 82-86; see also Jail File, Doc. 63-3 at 26], but that she did not find the Plaintiff's symptoms to be emergent at that time, [Ensley Dep., Doc. 63-5 at 57].

13

Accordingly, Defendant Mortier exercised her professional judgment and kept the Plaintiff under close observation in a holding cell in the medical unit. [Id. at 57-59; Jail File, Doc. 63-3 at 26]. The forecast of evidence further shows that when the Plaintiff's condition deteriorated and he suffered a second seizure, Defendant Mortier yelled for an officer to unlock the holding cell, yelled for someone to contact EMS, and immediately administered treatment to the Plaintiff. [Ensley Dep., Doc. 63-5 at 58-61; Jail File, Doc. 63-3 at 26]. The forecast of evidence simply does not support a claim that Defendant Mortier "ignored [the Plaintiff's] serious need for medical care." See Young, 238 F.3d at 275-76. To the contrary, the uncontroverted evidence shows that Defendant Mortier was attentive to the Plaintiff's need for medical care by examining and monitoring his condition.

In his memorandum in opposition to the Defendant's Motion for Summary Judgment, the Plaintiff argues that Defendant Mortier was deliberately indifferent to the Plaintiff's serious medical needs because she "ignored the dangers of Griffin's head trauma, and made a decision to delay sending him to [the] emergency room without consulting a physician, and purportedly to evaluate him for seizure activity." [Doc. 66 at 4]. However, "[q]uestions of medical judgment are not subject to judicial review." Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Instead, "if it appears from

14

the record that the prison medical authorities have made a sincere and reasonable effort to handle the prisoner's medical problems, the constitutional requirements have been met." Stokes, 393 F. Supp. at 763. Here, the forecast of evidence shows that Defendant Mortier was aware of the Plaintiff's medical needs and made a sincere and reasonable effort to evaluate the Plaintiff when he arrived in the medical unit, closely observe the Plaintiff, and ensure that the Plaintiff received emergency medical care when his condition declined. Whether the Defendant should have called for emergency medical care sooner or consulted with a physician before placing the Plaintiff under observation is a question of, at most, negligence. The evidence presented by the Plaintiff's expert is insufficient to allow this claim to survive Summary Judgment. That testimony is in the nature of a failure to meet the standard of care. As such, this testimony would, at best, support a negligence claim.[3] It does not, however, provide a forecast of indifference.

---

[3] It is doubtful that the Plaintiff's expert could provide this opinion, even in a medical negligence context, as he is not a health care provider. The only medical evidence is that from Defendant Mortier's expert, which indicates there was no negligence, much less indifference. [Doc. 63-9 at 1].

Accordingly, the Defendant's Motion for Summary Judgment is granted with respect to the Plaintiff's deliberate indifference claim under 42 U.S.C. § 1983.[4]

## B. The North Carolina Constitution

The North Carolina Constitution prohibits the infliction of "cruel or unusual punishments." N.C. Const. art. I, § 27. North Carolina courts have "analyzed cruel and/or unusual punishment claims by criminal defendants the same under both the federal and state Constitutions." State v. Pettigrew, 204 N.C. App. 248, 258, 693 S.E.2d 698, 705 (2010) (quoting State v. Green, 348 N.C. 588, 603, 502 S.E.2d 819, 828 (1998)); see also Johnson v. N.C. Dep't of Pub. Safety, No. 1:16-cv-267-FDW, 2019 WL 2011056, at *14 (N.C.W.D. May 6, 2019) ("[T]he analysis for Plaintiff's claim under the N.C. Constitution would be nearly (if not, then exactly) identical to its analysis under the Federal Constitution.").

---

[4] Because a reasonable juror could not find that Defendant Mortier violated a constitutional right in the first place, Defendant Mortier is also entitled to qualified immunity with respect to the Plaintiff's individual capacity claim under 42 U.S.C. § 1983. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) ("Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."); see also E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) ("To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) 'whether that right was clearly established at the time of the alleged violation.'"). Further, because a reasonable juror could not find that Defendant Mortier violated a constitutional right, the Court does not reach the Defendant's argument that she is entitled to sovereign immunity with respect to the Plaintiff's official capacity claim under 42 U.S.C. § 1983.

Because the forecast of evidence, in the light most favorable to the Plaintiff as the nonmoving party, does not show that the Defendant violated the Eighth Amendment's prohibition against cruel and unusual punishment, the Court also concludes that the forecasted evidence similarly fails to show that Defendant Mortier violated Article I, Section 27 of the North Carolina Constitution. Accordingly, the Defendant's Motion for Summary Judgment is granted with respect to the Plaintiff's claim under the North Carolina Constitution.

### C. Intentional Infliction of Emotional Distress

To assert a claim for intentional infliction of emotional distress, the Plaintiff must show (1) extreme and outrageous conduct by the Defendant, (2) which was intended to and did in fact cause (3) severe emotional distress. Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Smith-Price v. Charter Behav. Health Sys., 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (internal quotation marks and citation omitted). The threshold determination of whether the alleged conduct may be considered extreme and outrageous is a question of law. Id.

The Defendant's conduct does not meet this threshold. The forecast of evidence shows that Defendant Mortier examined the Plaintiff when he arrived at the medical unit, closely observed the Plaintiff, and acted when the Plaintiff's condition deteriorated by treating the Plaintiff with oxygen and calling for EMS. [Ensley Dep., Doc. 63-5 at 56-61; Jail File, Doc. 63-3 at 26]. Under these circumstances, the Defendant's decision to closely observe the Plaintiff rather than to contact EMS upon his arrival in the medical unit is not the sort of conduct that rises to the level of being "utterly intolerable" in civilized society. Accordingly, the Defendant's Motion for Summary Judgment is granted with respect to the Plaintiff's claim for intentional infliction of emotional distress.[5]

---

[5] Because a reasonable juror could not find that Defendant Mortier violated the North Carolina Constitution or that she engaged in extreme and outrageous conduct, the Court does not reach the Defendant's argument that she is entitled to public official immunity with respect to the Plaintiff's North Carolina law claims.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 63] is **GRANTED,** and this action is **DISMISSED WITH PREJUDICE.**

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED.**

Signed: May 13, 2022

Martin Reidinger
Chief United States District Judge

19

Case 1:18-cv-00098-MR-WCM   Document 68   Filed 05/13/22   Page 19 of 19